REUBEN KIDDER v. GEORGE C. CHAMBERLIN.

*Contract. Consideration. Fraud. Arbitrators.*

A court of law will not set aside a contract for inadequacy of consideration alone. The in-- adequacy of consideration may be such as to furnish evidence of fraud.

But in this case there was no fraud either on the part of the plaintiff, or the arbitrators to· whom it was referred to decide upon what terms the parties should trade horses.

TROVER for a horse. Plea, the general issue. Trial by the court, May term, 1867, BARRETT, J., presiding.

The plaintiff called as a witness James M. Kidder, who testified that he was a son of the plaintiff; that after sundown on Sunday, July 10, 1865, he swapped horses with the defendant; that the defendant proposed the trade; that he (Kidder) finally told him he would trade for $25; that they bantered along until between nine and ten o'clock, when Bundy and Goodyear came to where they were, and they agreed to leave it to them (Bundy and Goodyear), and they decided that the defendant should pay Kidder $7.50 to· boot, which he did that night; that the defendant's horse was in an· adjoining pasture; that the defendant took the plaintiff's horse that night; that it was agreed that Kidder should get the defend-- ant's horse in the morning, which he did before breakfast; that. the leg of this horse was jammed, and he put tar on it; that he heard nothing about the horses until the next Wednesday about, ten o'clock in the forenoon, when he saw the defendant's girl lead-- ing the horse he let the defendant have up the road, and when she· got along where they were mowing, she slipped off the bridle and turned him into the mowing; that his father asked her what she did it for, and she said her father told her to; that his father told her to take it back and tell her father to take care of it; that she ran down the hill; that he (Kidder) started the horse out of the. mowing and he went down the road to Goodyear's, and he shut him up; that he (Kidder) went to see about his horse, and one of the neighbors said the defendant and his girl had been and got it; that he then went to the defendant and demanded his horse, but the defendant refused to give it up and he never got it back; that this horse was worth $135; that Goodyear kept the other·

horse three or four weeks, when it was advertised and his (Kidder's) father went and got it, and soon after he sold it for $50; that there was no agreement with the defendant to take it back; that it was worth about $50 when he let the defendant have it; that its shoulder was knocked down a little when he sold it, and the horse was lame when he let the defendant have it; that the defendant knew it, and talked about it; that nothing else ailed it; that it was kind and manageable; that the defendant knew the horse when they traded as well as he did; that he said so and asked no favors of any one; that Bundy and Goodyear knew the defendant's horse well; that they drove his horse before they traded; that the defendant's horse was a colt and had not been used; that his father approved the trade.

Frederick Goodyear, called on the part of the plaintiff, testified as follows:

"Kidder and the defendant could n't agree about swapping horses. Soon Bundy drove up; the defendant said to Kidder, 'Let's leave it to these two men.' Think between nine and ten o'clock Kidder said he would do it. I told them I knew nothing about Kidder's horse, and wished to try it. I knew the defendant's horse, a three years old colt. Drove it near one fourth of a mile and back, and discovered it quite lame. Bundy asked what I thought of the horse. I replied, 'Seeing he is lame, I could n't do near as well for Kidder as before I drove him.' He said he was of more value to the defendant, because he could put him to business, and the colt was not old enough. He thought $10 difference in favor of Kidder, I thought about $5. We split the difference and notified the parties, and they traded."

On cross-examination, the witness testified:

"I saw shoulder made him lame; I saw nothing else the matter. Kidder asked $25. The defendant told him he could n't pay any such money, on account of that shoulder. Kidder said he did not think it would ever hurt him for work. Do n't know as I can state anything else that was said. They were part of the time talking between themselves at a distance; part of the time near me. Do n't know as Kidder said any more as to being serviceable. Do n't know as I ever saw it before that time. I thought the defendant's horse might possibly be worth $125 or $135; if Kidder's horse was all right, might name him good for $100. After I saw the difficulty, he would be worth but little for me. Guess I would have paid $50 for him. Think that was my judgment at the

time. Do n't know whether Bundy came to the same conclusion I did. Think Bundy thought the lameness did n't affect him for labor. I thought it doubtful about it. I discovered nothing else. I concluded the defendant ought to pay $5, because he wanted it to put into business. He said the colt would n't work; do n't know any other reason for so deciding. The colt had a gash on its leg; thought not to injure it. The defendant drove it occasionally; a few times during the summer. Do n't know whether Bundy knew this horse before."

There was no other evidence in the case, except that Goodyear testified as to the details of the trade the same as Kidder.

The court found, and it was not contradicted by the defendant, that said James M. Kidder, in all that he did in the matter of said trade, acted as the agent and by the authority of his father, the plaintiff, who adopted and ratified his acts. The court also found that said James M. practiced no fraud, either by representations or concealment, upon the defendant; that the defendant was well acquainted with him and with the horse of the plaintiff, and acted upon his own knowledge so far as the condition and qualities of said horse were concerned; that the action of Goodyear and Bundy in fixing the amount to be paid by the defendant as boot between said horses, was wholly independent of any act, practice or influence of said James M.; that both happened at the place of trade accidentally, and without any arrangement, or procurement, or knowledge of said James M. that either of them was to be there; that said trade was completed between nine and ten o'clock Sunday night, as the evidence tends to show, and the negotiation was not commenced before sundown. The court found such other facts as the evidence tends to show; also, the value of the horse sued for to be $130, and the value of the horse that the defendant returned to the plaintiff by his girl, as shown by the evidence, to be $50; that the defendant, without the knowledge or consent of the plaintiff or said James M., took the horse sued for from the plaintiff's possession, before he sent back the other horse by his girl as aforesaid, and that the plaintiff never did consent to it, and thereafter the defendant kept and disposed of it.

The court held that no fraud was practiced by the plaintiff or

his agent, said James M., upon the defendant in the making of said trade, and that the defendant was not entitled to rescind the trade and return the horse and retake the one he swapped away as aforesaid, and rendered judgment for the plaintiff for $80 dam-ages and costs, to which the defendant excepted.

*Hunton & Gilman*, for the defendant, maintained that he had a right to rescind, by reason of the inadequacy of the consideration, which, according to the finding of the court, is as 1 to 2¾, and the attending circumstances. *Howard* v. *Edgell et al.*, 17 Vt., 9–29; *Taylor et al.* v. *Olen*, 3 Price, 83 (1 Eng. Ex., 295); *Twisleton* v. *Griffith*, 1 P. Wms., 310; *Clarkson* v. *Hanway et al.*, 2 *Ib.*, 203; *Morrill* v. *Aden*, 19 Vt., 505.

On account of the gross misconduct of one of the arbitrators. Russell Arb., 120 [110], 442 [627]; *Eads* v. *Williams*, 31 Eng. L. & E., 203; *Cabell* v. *Taylor*, 18 *Ib.*, 101.

*Washburn & Marsh*, for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, C. J.   This is an action of trover for a horse.   The defendant claims that the contract under which the plaintiff claims title to the horse in question, should be set aside; 1st, for inadequacy of consideration; 2d, on the ground of fraud and corruption in the persons to whom the plaintiff and the defendant submitted the question as to the terms on which they should swap horses.

A court of law will not set aside a contract for inadequacy of consideration alone.   The inadequacy of consideration may be such as to furnish evidence of fraud. 12 Vt., 505.   But in this case the county court have expressly found that the plaintiff was not guilty of fraud in making the contract.   That finding disposes of this question.

As to fraud or corruption on the part of the arbitrators, the county court did not pass either way, but it is claimed that, from the facts found, it is manifest one of them, at least, did act corruptly. It is apparent from the facts found, that the arbitrators, in agreeing upon the terms upon which the parties should trade, did not act

upon the comparative market value of the two horses, but did act principally upon the value of the horses to the parties as they were situated, and the purpose for which they were wanted. The defendant's horse was an unbroken colt and had been injured; whether permanently or not, could not then be certainly known. He wanted a horse for present use. The plaintiff's horse was a good horse for business, but lame and not very valuable for sale. In view of all the circumstances the arbitrators fixed the terms, and, in doing so, probably did the defendant an injustice; but we see no sufficient reason, upon the facts found, for saying that it was corruptly or intentionally done. The defendant made no objection to the terms, but readily traded upon them. It appears that he was as well acquainted with both horses as the plaintiff or either of the arbitrators, and, for aught that appears, was as competent to judge of the value of either horse or of their relative value as any of the persons connected with the trade.

Upon these circumstances, we think we should not be warranted in declaring the contract void on the ground that the arbitrators acted corruptly.

Judgment of the county court affirmed.